1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

MOLLY C.,

                    Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

NO.  C17-1636-RAJ-JPD

REPORT AND
RECOMMENDATION

       Plaintiff appeals the final decision of the Commissioner of the Social Security

Administration ("Commissioner") which denied her application for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing

before an administrative law judge ("ALJ").  For the reasons set forth below, the Court

recommends that the Commissioner's decision be REVERSED and REMANDED for further

administrative proceedings.

                   I.       FACTS AND PROCEDURAL HISTORY

       At the time of the administrative hearing, plaintiff was a fifty-nine year old woman

with the equivalent of a high school education and some college courses.  Administrative

Record ("AR") at 49.  Her past work experience includes employment as a bookkeeper, marine

insurance claims clerk, account technician, office helper, and various roles for the City of

REPORT AND RECOMMENDATION - 1

Seattle and the Dominican Sisters.  AR at 55-59, 71.  Plaintiff was last gainfully employed in 2012.  AR at 55.

On March 26, 2014, she filed an application for DIB, alleging a disability onset date of August 1, 2013.  AR at 19, 94.  During the administrative hearing, plaintiff amended her alleged onset date to February 18, 2014.  AR at 19, 46.  Plaintiff asserts that she is disabled due to Ehlers-Danlos syndrome (or joint hypermobility syndrome), bilateral shoulder problems, hand and finger sprains and weakness, hepatitis C, spondylosis, degenerative disc disease, bilateral knee problems, lower back pain, radiculopathy, depression, and anxiety, and panic attacks.  AR at 53-54, 85.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 111, 115.  Plaintiff requested a hearing, which took place on April 20, 2016 in Seattle, Washington.  AR at 43-80.  On June 8, 2016, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 16-33.  Plaintiff's request for review was denied by the Appeals Council, AR at 1-7, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On November 2, 2017, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 1.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to

last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On June 8, 2016, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2.    The claimant has not engaged in substantial gainful activity since August 1, 2013, the alleged onset date.

3.    The claimant has the following severe impairments: major depressive disorder, anxiety disorder, degenerative disc disease, joint dysfunction, and hepatitis C now in remission.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with some exceptions.  The claimant can never climb ladders, ropes or scaffolds, work at unprotected heights or in proximity to hazards, or reach overhead.  She can occasionally climb ramps and stairs, stoop, kneel crouch and crawl.  In

1

order to persist in an ordinary full time work schedule, the claimant
can perform unskilled work, as well as semiskilled work to which
skills obtained in past relevant work will transfer with no more than
three to six months of training.

2

3

6.    The claimant is capable of performing past relevant work as a Payroll
Clerk.  This work does not require the performance of work-related

4

5

7.    The claimant has not been under a disability, as defined in the Social
Security Act, from August 1, 2013, through the date of this decision.

6

AR at 21-33.

7

VI.    ISSUES ON APPEAL

8

The principal issues on appeal are:

9

1.    Did the ALJ err in evaluating plaintiff's testimony?

10

2.    Did the ALJ err in evaluating the medical opinion evidence?

11

3.    Did the ALJ err at steps four and five?

12

Dkt. 8 at 1; Dkt. 12 at 1-2.

13

VII.    DISCUSSION

14

A.    The ALJ Did Not Err in Evaluating Plaintiff's Testimony

15

1.    Legal Standard for Evaluating the Plaintiff's Testimony

16

As noted above, it is the province of the ALJ to determine what weight should be

17

afforded to a claimant's testimony, and this determination will not be disturbed unless it is not

18

supported by substantial evidence.  A determination of whether to accept a claimant's

19

subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929;

20

*Smolen*, 80 F.3d at 1281.  First, the ALJ must determine whether there is a medically

21

determinable impairment that reasonably could be expected to cause the claimant's symptoms.

22

20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces

23

medical evidence of an underlying impairment, the ALJ may not discredit the claimant's

24

testimony as to the severity of symptoms solely because they are unsupported by objective

REPORT AND RECOMMENDATION - 6

1   medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v.*

2   *Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the

3   claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the

4   claimant's testimony.[2]  *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing

5   *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)).  *See also Lingenfelter v. Astrue*, 504

6   F.3d 1028, 1036 (9th Cir. 2007).

7           When evaluating a claimant's subjective symptom testimony, the ALJ must specifically

8   identify what testimony is not credible and what evidence undermines the claimant's

9   complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at

10  722.  The ALJ may consider "ordinary techniques of credibility evaluation," including a

11  claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and

12  conduct, daily activities, work record, and testimony from physicians and third parties

13  concerning the nature, severity, and effect of the alleged symptoms.  *Thomas*, 278 F.3d at 958-

14  59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

15          2.      *The ALJ Provided Two Clear and Convincing Reasons for Affording*
                    *Plaintiff's Testimony Less Weight*

16          The ALJ found that plaintiff's "medically determinable impairments could reasonably

17  be expected to cause some of the alleged symptoms; however, the claimant's statements

18  concerning the intensity, persistence and limiting effects of these symptoms are not entirely

19  consistent with the medical evidence and other evidence in the record[.]"  AR at 26.

20

21          [2] In Social Security Ruling (SSR) 16-3p, the Social Security Administration rescinded
    SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that

22  "subjective symptom evaluation is not an examination of an individual's character[,]" and
    indicated it would more "more closely follow [its] regulatory language regarding symptom

23  evaluation."  SSR 16-3p.  This change was effective March 28, 2016, and therefore applies to
    the June 8, 2016 ALJ decision in this case.  The Court, however, continues to cite to relevant

24  case law utilizing the term credibility.

REPORT AND RECOMMENDATION - 7

1    Specifically, the ALJ rejected plaintiff's symptoms allegations because of inconsistency with

2    (1) her daily activities as well as (2) the objective medical findings.  AR at 26-27.  As

3    discussed below, in light of the deference the Court must give to the ALJ's evaluation of the

4    claimant's symptom testimony, the Court finds the ALJ's reasons were clear and convincing,

5    and supported by substantial evidence.  Moreover, plaintiff did not meaningfully address this

6    issue in her brief, and therefore has shown no harmful error in the plaintiff's evaluation of her

7    testimony.  Dkt. 16 at 8.  *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2

8    (9th Cir. 2008) ("[I]ssues not argued with specificity in briefing will not be addressed.").

9         Plaintiff alleged she was disabled and could not work because of physical and mental

10   limitations.  AR at 25-26, 187.  She claimed she could not stand or sit because of neck and

11   lower back pain.  AR at 25, 65, 187, 212, 216.  She said she "end[s] up on the floor because

12   [the pain is] so excruciating and my legs go numb," AR at 65, and asserted constant pain from

13   "head to toe [in] almost all my joints."  AR at 240.  She checked boxes on a form describing

14   limitations in all physical activities, including lifting, standing, sitting, walking, reaching, and

15   climbing stairs.  AR at 245.  With respect to mental impairments, plaintiff alleged problems

16   with her memory, task completion, concentration, and getting along with others.  AR at 245.

17   She said she cried daily because of depression and missed "all the many social activities" she

18   used to engage in.  AR at 67-68, 245-46.  The ALJ found these allegations not fully reliable.

19   AR at 25-26.

20        First, the ALJ found that plaintiff's allegations were inconsistent with plaintiff's

21   "activities throughout the relevant period." AR at 26.  An ALJ may discount a claimant's

22   allegations that are inconsistent with her activities of daily living.  *Batson v. Comm'r of Soc.*

23   *Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  Contrary to plaintiff's report that she

24   "end[s] up on the floor because [the pain is] so excruciating and my legs go numb," AR at 65,

REPORT AND RECOMMENDATION - 8

she told clinicians that she performed household chores (including doing laundry), spent time socializing with family and friends, played cards and board games, and even went swimming. AR at 27, 418. She repeatedly drove herself to medical appointments. AR at 26, 415. She regularly traveled for extended periods (such as many weeks) to Mexico, the Caribbean, and Hawaii without any special accommodations during her travel. AR at 26, 63 (testifying she stood in line at the airport for her flight to St. Thomas and denying she needed special accommodations), 339 (reporting travel to Mexico for 7 weeks), 667 (reporting return from trip to Hawaii), 952-53 (lamenting that she "will have to miss a vacation to Maui that my boyfriend and I have already for paid" because she needed to make an appointment to ask her doctor to complete a disability form). During her trip to the Caribbean, she took sightseeing tours requiring travel on ferry boats. AR at 26, 64. The ALJ did not err by finding that plaintiff's extensive travel, and other daily activities, were inconsistent with her allegations. AR at 26-27.

Similarly, the ALJ found plaintiff's allegations of depression and difficulties concentrating unreliable because they were at odds with her daily activities. AR at 26-27. At the hearing, plaintiff testified that she cried daily because of depression and missed "all the many social activities" she used to engage in. AR at 67-68, 245-46. But during clinical examinations, she reported that she regularly socialized with family and friends, engaged in activities such as playing cards and board games, and got along well with coworkers and supervisors. AR at 27, 215, 416, 418, 423. Plaintiff also alleged problems with concentration, memory, and task completion. AR at 245. However, the ALJ pointed out that plaintiff has reported "reading and watching the news for up to five hours daily." AR at 27 (citing AR at 215). The ALJ further pointed out that plaintiff has researched her own medical conditions and drafted lengthy and detailed correspondence describing her medical conditions and challenging some of her clinicians' interpretations of her medical impairments. AR at 26-27 (citing AR at

52-54, 486-87, 489-90, 492-93).  The ALJ reasonably found that these activities undermined plaintiff's alleged symptoms.  AR at 26-27.  Thus, plaintiff's activities during the relevant period were a clear and convincing reason for the ALJ to afford her testimony less weight.

Second, the ALJ found that plaintiff's allegations did not comport with the minimal and mild physical examination findings in the record.  AR at 27.  An ALJ may reject a claimant's symptom allegations if they "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1227 (9th Cir. 2009).  As noted above, plaintiff alleged she "end[s] up on the floor because[the pain is] so excruciating and my legs go numb." AR at 65.  However, physical examinations repeatedly revealed normal findings, including negative straight leg raise, normal spinal alignment, and intact sensation.  AR at 27 (citing AR at 361 (physician observing "grossly normal" musculoskeletal findings), 433 (reporting plaintiff sat "comfortably" and in no acute distress, with "negative SLR," normal spinal alignment, and normal station and gait), 521 ("She moves about the room with relative ease without difficulty getting onto the examination table."), 684 (finding intact sensation and "no evidence of scoliosis or kyphosis" of the spine)).  Plaintiff also claimed she experienced constant pain from "head to toe [in] almost all my joints" and could lift only 10 pounds.  AR at 240, 245.  However, plaintiff retained intact muscle strength in all extremities, with no evidence of any muscle atrophy one would associate with debilitating pain and limitations.  AR at 27 (citing AR at 433 (reporting "5/5" strength in all extremities), 684 (finding "full" muscle strength in "all 4 extremities")).  The ALJ reasonably discounted plaintiff's alleged physical symptoms given their inconsistency with such objective findings, and found that "the lack of significant and consistent physical examination findings over the course of the relevant period," as well as "the normal strength and lack of any muscle atrophy," is inconsistent with the claimant's allegations of severe physical limitations."  AR at 27.

1   With respect to plaintiff's allegations of mental symptoms, the ALJ similarly found her

2   claims to be incongruent with the objective clinical evidence.  AR at 28.  Specifically, the ALJ

3   observed that that "the regular notations in [plaintiff's] treatment notes of normal psychiatric

4   observations are inconsistent with the allegations of severely limiting mental health

5   symptoms." AR at 28.  Although plaintiff alleged depression so severe she cried daily, AR at

6   67-68, psychiatric providers often found her to be pleasant, cooperative, and presenting with

7   normal speech and good attitude.  AR at 28, 417, 423, 433, 521.  However, the ALJ did

8   acknowledge that plaintiff was also observed to present as tearful during examinations, or

9   mildly depressed and anxious.  AR at 28.  However, the ALJ observed that "these observations

10   made in the controlled environment of the offices of claimant's treating and evaluating

11   providers, [and] they are inconsistent with her allegations of severely limiting mental health

12   symptoms, including difficulty leaving her home and getting along with others."  AR at 28.

13   Although plaintiff alleged having difficulties with memory and concentration, AR at 245,

14   mental status examinations frequently reflected normal attention and concentration, normal

15   memory, and logical thought process.  AR at 28, 714, 754, 846, 902.  Although this is not as

16   strong of a reason as the ALJ's discussion of plaintiff's daily activities, the ALJ did not err by

17   rejecting plaintiff's testimony based upon their inconsistency with normal mental status

18   examination findings in the treatment record.  AR at 28.

19   Accordingly, the ALJ provided two clear and convincing reasons, supported by

20   substantial evidence, for affording plaintiff's testimony less weight.  As discussed below,

21   however, this case is being remanded for further evaluation of the medical opinion evidence.

22   On remand, the ALJ shall reevaluate plaintiff's testimony, as needed, following a second

23   administrative hearing and the Court's reevaluation of the medical evidence.

24

1

B.     The ALJ Erred in Evaluating the Medical Opinion Evidence

2

       1.     *Standards for Reviewing Medical Evidence*

3

     As a matter of law, more weight is given to a treating physician's opinion than to that

4

of a non-treating physician because a treating physician "is employed to cure and has a greater

5

opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*, 881 F.2d

6

747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating

7

physician's opinion, however, is not necessarily conclusive as to either a physical condition or

8

the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

9

*Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining

10

physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

11

contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*,

12

157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough

13

summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

14

making findings."  *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than

15

merely state his/her conclusions.  "He must set forth his own interpretations and explain why

16

they, rather than the doctors', are correct."  *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22

17

(9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.

18

*Reddick*, 157 F.3d at 725.

19

     The opinions of examining physicians are to be given more weight than non-examining

20

physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Like treating physicians, the

21

uncontradicted opinions of examining physicians may not be rejected without clear and

22

convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining

23

physician only by providing specific and legitimate reasons that are supported by the record.

24

*Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

REPORT AND RECOMMENDATION - 12

1    Opinions from non-examining medical sources are to be given less weight than treating

2    or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the

3    opinions from such sources and may not simply ignore them.  In other words, an ALJ must

4    evaluate the opinion of a non-examining source and explain the weight given to it.  Social

5    Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives

6    more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

7    non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

8    consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

9    957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

10    2.    *The ALJ Erred by Assigning "No Weight" to the Opinions of the*
          *Treating Physicians in Favor of Non-Examining Physicians*

11    The ALJ discussed and either rejected or gave "little weight" to the medical opinions of

12    treating physicians Daniel Letinsky, M.D., Daniel Krishin, M.D., Christina Graham, Ph.D., in

13    favor of the opinions of Norman Staley, MD, a state agency medical consultant who neither

14    examined nor treated plaintiff, and Diane Fligstein, PH.D. and James Bailey, Ph.D., two state

15    agency non-examining psychological consultants whose opinions the ALJ afforded "some

16    weight."  AR at 29–30.  Plaintiff argues the ALJ erred by failing to provide specific and

17    legitimate reasons for rejecting treating doctors' opinions in favor of the non-treating/non-

18    examining doctors.  The Court agrees, and finds that the ALJ's evaluation of the medical

19    evidence in this case runs afoul of the hierarchy discussed in *Orn v. Astrue,* 495 F.3d 625 (9th

20    Cir. 2007).  As this error must be corrected on remand, a brief discussion of the ALJ's errors

21    with respect to each treating physician is addressed below.

22

23

24

1

       3.    *Daniel Letinsky, M.D.*

2          Dr. Letinksy has been plaintiff's primary treating physician since March 2014.  AR at

3  657.  He submitted a letter in support of her claim and also completed a medical source

4  statement regarding her ability to do work-related activities.  AR at 657-61.  Dr. Letinksy

5  explained that her chronic pain limits her ability to stand and sit for prolonged periods,

6  estimating that she could not sit for more than 2-3 hours in an 8-hour work-day and could not

7  stand/walk for more than 2-3 hours total during a work-day.  AR at 657, 659.  He indicated that

8  her pain would likely cause her to miss 4-5 days of work per months and that she would also

9  require unscheduled breaks from work, and also cause moderate to marked impairment in her

10  ability to maintain an appropriate pace at work and interfere with her concentration and

11  productivity.  AR at 660.  Dr. Letinksy concluded that she would be unable to maintain full-

12  time employment. AR at 657.

13          The ALJ rejected Dr. Letinsky's opinions without providing specific, legitimate reasons

14  for doing so. AR at 29.  The ALJ stated that Dr. Letinsky's opinion is given little weight

15  because "the severe limitations described by Dr. Letinsky are also inconsistent with the

16  claimant's minimal physical examination, findings, and indications she rarely presented in any

17  notable pain during the relevant period, and her activities."  AR at 29.

18          First, the ALJ erred by asserting in a conclusory manner that Dr. Letinksy's opinions

19  are inconsistent with clinical findings, without identifying any specific conflict between the

20  clinical findings and Dr. Letinsky's assessment.  "To say that medical opinions are not

21  supported by sufficient objective findings or are contrary to the preponderant conclusions

22  mandated by the objective findings does not achieve the level of specificity . . . required, even

23  when the objective factors are listed seriatim." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir.

24  1988).  The ALJ acknowledged that plaintiff is severely limited by her pain, finding that she is

REPORT AND RECOMMENDATION - 14

capable of less than the full range of sedentary work.  AR at 25.  However, the ALJ failed to

articulate how the physical examination findings could be consistent with a limitation to

sedentary work but at the same time inconsistent with the limitations identified by Dr.

Letinsky.  For example, Dr. Letinsky found that plaintiff could lift and carry ten pounds, AR at

659, which parallels the ALJ's RFC finding and other medical opinions endorsed by the ALJ.

AR at 25, 29.  Dr. Letinsky further found that plaintiff could only sit for 2-3 hours and

stand/walk for 2-3 hours per 8-hour work-day. AR at 659.  The ALJ failed to explain how the

clinical findings from her physical examinations at medical appointments demonstrated an

ability to sit, stand, and/or walk for more than 3 hours.  Similarly, the ALJ did not explain how

the clinical findings conflicted with Dr. Letinsky's opinion that plaintiff would miss 4-5 days

of work per month and require extra breaks.  Without more, the bare assertion that Dr.

Letinsky's opinions are inconsistent with the medical findings is not a sufficient basis for

rejecting his assessment. AR at 29.  The ALJ was required to more thoroughly explain her

reasoning. *Embrey*, 849 F.2d at 421.

The ALJ also erred in discounting Dr. Letinksy's opinions based on a lack of objective

corroboration, noting that "the severe limitations described by Dr. Letinsky are . . .

[inconsistent with] the indications she rarely presented in any notable pain during the relevant

period." AR at 29.  Pain is an inherently subjective symptom.  *Smolen v. Chater*, 80 F.3d

1273, 1282 (9th Cir. 1996).  Neither the existence, nor the severity of pain can be objectively

measured or verified.  *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  Thus, in discounting

Dr. Letinsky's opinions as inconsistent with plaintiff's failure to "present" in "notable pain,"

the ALJ improperly required objective evidence of pain, a symptom which is not susceptible to

objective measurement.  *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).  Accordingly,

1    this case must be remanded so the ALJ can reevaluate Dr. Letinsky's opinion, and provide

2    specific and legitimate reasons for rejecting it should such a conclusion be warranted.

3              4.      Daniel Krishin, M.D.

4         Dr. Krashin, a pain medicine doctor who consulted in plaintiff's treatment, completed a

5    long-term disability insurance form and a residual functional capacity (RFC) form on her

6    behalf.  AR at 640-45, 699-702.  Dr. Krashin noted in his RFC form that plaintiff suffers from

7    chronic pain which prevents her from sitting or standing for more than 30 minutes at a time

8    and requires frequent changes of position.  AR at 641.  He observed that her chronic pain and

9    fatigue require her to lie down intermittently during the day. AR at 642.  Her ability to reach is

10   severely limited and she cannot lift and carry more than 5-10 pounds. AR at 642.  He indicated

11   her prognosis was "chronic disability." AR at 641.  In the insurance form he completed, he

12   concluded that she is "unlikely to return to work given chronic pain conditions." AR at 700.

13   He also noted that plaintiff first consulted him for this condition in October 2014, and that he

14   also treated her in September, October, and December 2015.  AR at 699.

15        The ALJ appears to have mischaracterized the context of Dr. Krashin's opinions, by

16   stating that he was consulted in two visits to produce an opinion as to disability.  AR at 29.

17   However, Dr. Krashin is a pain specialist who also consulted on plaintiff's treatment after a

18   referral from another physician in the Rehabilitation Medicine Department at Harborview

19   Hospital. AR at 422.  His initial consultation occurred approximately a year prior to the date he

20   completed the disability paperwork.  AR at 422-27, 640-45, 700-02.[3]

21

22

23        [3] Furthermore, the ALJ's statement that Dr. Drashin's opinion was created "after the
     claimant's treating providers declined" may be somewhat misleading.  AR at 29.  Plaintiff's other
     treating providers appear to have advised plaintiff that their office does not fill out the papers, and
24   instead referred her to her primary care provider to do so. AR at 953.

REPORT AND RECOMMENDATION - 16

1    The ALJ was not required to accept Dr. Krashin's opinion that plaintiff is unable to

2  work, as this is an issue reserved to the Commissioner.  However, the fact that Dr. Krashin

3  expressed such an opinion is not a sufficient reason for rejecting a medical opinion.  *Reddick v.*

4  *Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (ALJ is not bound by medical source opinions as to

5  ultimate issue of disability but cannot reject them without providing valid reasons for doing

6  so).  The ALJ also rejected Dr. Krashin's opinions for the same reasons she rejected the

7  opinions of Dr. Letinsky. AR at 29.  These reasons, which are addressed above, are no more

8  specific or legitimate when applied to Dr. Krashin's opinions.  In other words, the ALJ did not

9  articulate any specific conflict between Dr. Krashin's assessment and the clinical findings or

10  plaintiff's activities.  This error was not harmless, as the ALJ did not account for the

11  limitations identified by Dr. Krashin in the RFC assessment. Accordingly, on remand, the ALJ

12  must also reevaluate the opinions of Dr. Krashin, while properly acknowledging his more

13  extensive treatment history with the plaintiff.

14                    *5.      Christina Graham, Ph.D.*

15    Plaintiff's treating psychologist, Dr. Graham, completed a medical source statement

16  identifying numerous marked to severe limitations regarding plaintiff's ability to perform work-

17  related activities.  AR at 703-706.  She found that plaintiff was severely limited in her ability to

18  maintain concentration for extended periods, complete a normal workday and workweek without

19  interruptions due to her mental symptoms, the ability to maintain a reasonable pace, and the ability

20  maintain sufficient stamina to persist through a normal workday and workweek.  AR at 705.  In

21  addition, she found that plaintiff was markedly impaired in her ability to work within a schedule,

22  work in proximity to others without being distracted, and make work-related decisions. AR at 705.

23  She concluded that plaintiff "would be unable to perform regular full-time employment." AR 706.

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

The ALJ gave Dr. Graham's opinion "no weight," because "in describing the support for her suggestions of various marked limitations, Dr. Graham relies heavily on the claimant's subjective statements, which are inconsistent with her medical records as indicated above."  AR at 30.  However, the ALJ did not cite evidence to support this conclusion.  AR at 30.  Dr. Graham acknowledged that she considered plaintiff's report but also indicated that she relied on her own clinical observations.  AR at 706.  Dr. Graham had nine separate treatment sessions with plaintiff over the course of more than a year. AR at 706.  Her treatment notes document clinical findings that plaintiff's speech is over-inclusive and verbose, her thought processes circumstantial.  AR at 714, 754-55, 845-46, 902-903, 990-91, 1014-15, 1059, 1104-1105.  Her clinical observations also include the fact that plaintiff exhibited psychomotor agitation, perseveration, pain behaviors, and was frequently tearful.  A clinical interview is an "objective measure[]" of mental functioning and "cannot be discounted as a 'self-report.'"  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).  The mere fact that Dr. Graham considered plaintiff's account of her symptoms is not a valid reason to discount her conclusions.  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).  Treating and examining psychologists, by definition, interact with the claimant and consider his account of his symptoms.  *See also Ferrando v. v. Comm'r*, 449 Fed. Appx. 610, 2011 WL 3893801, at *2 n.2 (9th Cir. 2011) ("To allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's 'subjective allegations' is to allow an end-run around our rules for evaluating medical opinions for the entire category of psychological disorders.").  An ALJ does not provide a valid basis for rejecting an examining physician's opinion "by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

The ALJ also found no evidence that Dr. Graham, as a psychologist, was qualified to assess plaintiff's levels of pain, fatigue, or anxiety.  AR at 30.  However, it is not clear how the ALJ

REPORT AND RECOMMENDATION - 18

1    reached this conclusion, as Dr. Krashin specifically referred plaintiff to Dr. Graham for cognitive

2    behavior therapy "to work on pain and anxiety." AR at 425, 1109.  Dr. Graham's initial evaluation

3    reflects that she was asked to "assess the appropriateness of cognitive behavioral therapy for

4    chronic pain." AR at 1109.  Each treatment note further indicates that Dr. Graham is providing

5    "health and behavioral therapy intervention session for the management of chronic fatigue and

6    pain."  AR at 714.  Indeed, a letter from Dr. Graham, dated Feburary 23, 2016, explains that she

7    has been working directly with plaintiff since December 2014 for health and behavior therapy in

8    the context of chronic pain, and "health and behavior therapy is an evidence-based treatment to

9    help improve quality of life and functioning in individuals with chronic pain by changing behavior,

10   thoughts about pain, and general coping skills."  AR at 703.  She further noted that plaintiff's

11   "significant anxiety and mood disturbance are made worse by her chronic pain, and in turn her

12   ability to cope with and manage chronic pain is hindered by emotional distress."  AR at 703.  Thus,

13   without further explanation, the ALJ's finding that Dr. Graham was "not qualified" to assess

14   plaintiff's levels of pain, fatigue, or anxiety is not specific, legitimate, or supported by substantial

     evidence.

15        Finally, as discussed above with respect to Drs. Letinsky and Krashin, the ALJ rejected

16   Dr. Graham's conclusions as inconsistent with plaintiff's failure to present in any notable pain

17   during the relevant period, her normal psychiatric presentations during appointments, indications of

18   normal cognitive functioning and performance on mental status examinations, and plaintiff's

19   activities, including "drafting lengthy and articulate communications to her treating providers."

20   AR at 30.  The ALJ is correct that plaintiff typically did well on mental status examinations with

21   Dr. Graham.  AR at 28, 714-15 (reflecting memory, attention and concentration within normal

22   limits; pleasant and cooperative, fair to good judgment), 754-55 (same), 902-03 (same), 990-91

23   (same).  However, as the ALJ acknowledged elsewhere in her decision, plaintiff also often

24   appeared tearful throughout the relevant period when she met with other providers.  AR at 341

1   (depressed, very emotional, tearful), 356 (tired appearing, tangential), 361 (depressed, anxious),

2   367 (depressed, anxious, tangential), 379 (depressed anxious, tangential), 445 (depressed,

3   tangential, talkative), 596 (flighty in thinking, borderline tearful), 666 (tangential), 671 (tangential,

4   talkative), 676 (anxious, sits on edge of chair, talkative, tangential), 684 (depressed tangential,

5   talkative), 693 (anxious, depressed, tangential, talkative), 980 (very anxious, tearful), 1024 (down).

6   Thus, plaintiff's performance on mental status examinations throughout the relevant period is not a

7   specific and legitimate reason to reject Dr. Graham's opinion.

8          As discussed above, the ALJ also did not articulate any specific conflict between Dr.

9   Graham's actual assessment and plaintiff's activities, and relies too heavily upon plaintiff's ability

10  to draft correspondence to her doctors.  The Court is not persuaded that plaintiff's ability to draft

11  occasional emails to her doctors somehow negates plaintiff's allegations regarding her symptoms.

12  In fact, the Court agrees with plaintiff's observation that her emails to her providers appear

13  "consistent with Dr. Graham's clinical observations that [plaintiff] tends to be overinclusive and

14  verbose and perseverates over her physical condition."  Dkt. 8 at 15.[4]  The ALJ's errors in

15  evaluating Dr. Graham's opinion were not harmless, as the ALJ did not account for the limitations

16  identified by Dr. Graham in the RFC assessment.

17          6.    *Diane Fligstein, PH.D. and James Bailey, Ph.D.*

18          Two State agency psychological consultants, Diane Fligstein, Ph.D., and James Bailey,

19  Ph.D., reviewed the record evidence and offered their opinions of plaintiff's functioning on June

20  23, 2014 and December 11, 2014, respectively.  AR at 90-91, 107-08.  Observing that plaintiff did

21  well on the mental status examinations, Drs. Fligstein and Bailey opined that plaintiff could carry

22  out both simple, routine tasks and complex tasks, though her depression and anxiety would "at

23  times make it difficult for her to sustain concentration for more complex tasks."  AR at 90-91, 107.

24          [4] Indeed, plaintiff's testimony during the administrative hearing reflects this same
    tendency.

REPORT AND RECOMMENDATION - 20

1    The ALJ gave only "some weight" to the portion of the opinion assessing some difficulty

2    sustaining concentration for more complex tasks, for the same reasons identified above.  AR at

3    30.  However, the ALJ provided no reasons for rejecting other aspects of their opinions.

4         The Commissioner argues that "by referencing [reasons for rejecting other doctors'

5    opinions] in the record, the ALJ appropriately rejected the opinions from Drs. Fligstein and

6    Bailey." Dkt. 12 at 8.  However, the Commissioner's arguments amount to improper *post hoc*

7    rationalizations for the ALJ's conclusion.  The ALJ's error was not harmless, as the ALJ's

8    disability determination relied on vocational testimony that assumed plaintiff had the ability to

9    perform semi-skilled work.  AR at 31-33.  The ALJ must more thoroughly discuss the weight

10   afforded to these opinions.

11        On remand, the ALJ is directed to re-evaluate all the medical opinion evidence of

12   record, in light of the direction provided by this Report and Recommendation.  The ALJ should

13   not have given the opinions of the non-treating and non-examining doctors more weight than

14   those of the examining and treating doctors, especially when virtually all of the examining

15   and/or treating doctors concluded that plaintiff has serious mental and physical impairments.

16   *See Magallanes,* 881 F.2d at 751 ("We afford greater weight to a treating physician's opinion

17   because 'he is employed to cure and has a greater opportunity to know and observe the patient

18   as an individual.'").  The ALJ essentially disregarded all opinions from physicians who saw

19   and treated plaintiff, in favor of those who never saw or treated plaintiff.  This cannot be

20   squared with the holding in *Orn.  See Orn,* 495 F.3d at 631.  On remand, the ALJ should also

21   re-evaluate plaintiff's symptom testimony as needed, as the ALJ's reasoning in evaluating the

22   medical evidence is inextricably intertwined with her evaluation of plaintiff's allegations.

23

24

C.    <u>On Remand, the ALJ Shall Re-Evaluate Steps Four and Five</u>

Plaintiff argues that the ALJ's analysis at both steps four and five was erroneous.  With respect to the ALJ's analysis at step four, plaintiff contends that the ALJ erred by failing to address her past relevant work as a "composite" position.  Dkt. 8 at 3.  With respect to the ALJ's step five analysis, plaintiff argues that the ALJ erred by not citing evidence to support her finding that plaintiff had transferable skills.  *Id*. at 4.

Defendant concedes that the ALJ erred in finding that plaintiff could perform her past relevant work.  Dkt. 12 at 17.  However, defendant argues that this error was harmless because the ALJ proceeded to step five and made an alternative finding that plaintiff could perform other work existing in significant numbers in the national economy, and plaintiff had acquired skills from her past work "based on the testimony of the vocational expert."  Dkt. 12 at 17 (citing AR at 33, 79).

Because this Court has determined the ALJ erred in evaluating the medical evidence, it is unnecessary to resolve the parties' disagreement regarding step five.  Rather, this case will be remanded back to the ALJ for a proper assessment of the medical evidence, a reevaluation of the RFC, and a reevaluation of plaintiff's testimony, as appropriate.  The ALJ will redo the step five analysis based on this reevaluation.  If the ALJ intends to rely on plaintiff's transferable skills at step five, the ALJ should elicit more detailed discussion of these skills from a vocational expert during the administrative hearing.

VIII.    CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

1    Objections to this Report and Recommendation, if any, should be filed with the Clerk

2   and served upon all parties to this suit by no later than **November 14, 2018**.  Failure to file

3   objections within the specified time may affect your right to appeal.  Objections should be

4   noted for consideration on the District Judge's motion calendar for the third Friday after they

5   are filed.  Responses to objections may be filed within **fourteen (14)** days after service of

6   objections.  If no timely objections are filed, the matter will be ready for consideration by the

7   District Judge on **November 16, 2018**.

8    This Report and Recommendation is not an appealable order.  Thus, a notice of appeal

9   seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

10  assigned District Judge acts on this Report and Recommendation.

11    DATED this 31st day of October, 2018.

13  *James P. Donohue*
    JAMES P. DONOHUE
14  United States Magistrate Judge

REPORT AND RECOMMENDATION - 23